Mark J. Ingber, Esq.
THE INGBER LAW FIRM
30 West Mt. Pleasant Avenue
Suite 203
Livingston, New Jersey 07039
Tel: (973) 921-0080
ingber.lawfirm@gmail.com
*Attorney for Dabur India Ltd.*
*d/b/a Dabur International Ltd.*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DABUR INDIA LTD and<br><br>DABUR INTERNATIONAL USA,<br><br><br>        Plaintiff,<br><br>    v.<br><br><br>MEENAXI ENTERPRISES INC., NUPUR TRADING LLC, TATHASTU TRADING LLC, MEENAXI GANDHI, ALKA H. AMIN, HEMANG S. AMIN and RASHMI DESAI<br><br><br>        Defendants. | Civil Action No: 2:21-CV-00000<br><br><br><br>**AMENDED COMPLAINT**<br><br><br><br>(Jury Demand) |

Plaintiffs Dabur India, Ltd. ("Dabur India"), and Dabur International USA ("Dabur USA") by their attorneys and for their Complaint against Defendants Meenaxi Enterprises, Inc. Nupur Trading, LLC, Tathastu Trading, LLC, Meenaxi Gandhi, Alka H. Amin, Hemang S. Amin, and Rashmi Desai ("Defendants") allege, and state as follows:

## NATURE OF ACTION

1.  This action is based on each Defendant's unauthorized purchase of Dabur India's

personal care and food products, and each Defendant's misleading advertising and sale of those

same goods.  In short, each Defendant:

    i)        Acquired Dabur India goods using unauthorized third-party suppliers that subverted Dabur India's contracts with its authorized suppliers and distributors.

    ii)       Has been selling and distributing, substantial volumes of unauthorized Dabur India branded products in the U.S., which products were manufactured and intended for sale exclusively outside the U.S. (the "Unauthorized Dabur Gray Market Goods").

    iii)      Marketed the Gray Market Goods, which, contrary to the Dabur India goods authorized for sale in the U.S. ("Authorized U.S. Goods"), do not comply with FDA labeling requirements, may contain non-FDA approved ingredients, do not satisfy quality control export requirements and/or are otherwise materially different from the Authorized U.S. Goods.

    iv)      Sells materially different Gray Market Goods that are likely to cause consumer confusion as to the affiliation between the Defendants and the Defendants and their Gray Market Goods and Dabur India and their Authorized U.S. Goods.

    v)        Is freeriding on the back of Dabur India's significant investment in its products' reputation, quality, safety, and warranty.

2.  Each Defendant's  unauthorized activity not only undermines the quality assurance control

2

provided through Dabur's India's exclusive authorized distributors, it also gives  customers a misimpression that  the Gray Market Goods offered by each Defendant are equivalent to Dabur India's  authorized products which are distributed exclusively in the U.S.  by  Dabur USA.

3.   The individual actions by each Defendant  are, by their very nature, designed to avoid detection, as each Defendant constantly seeks new unauthorized sources of Dabur India's Gray Market Goods and new marketing techniques.  This irreparably harms Dabur India's business model and the reputation of its goods and makes each Defendant's unauthorized actions impossible to remedy through business methods alone.

4.   Therefore, Plaintiffs bring this lawsuit to remedy the substantial and irreparable harm caused by each Defendant's unauthorized purchase, sale, and marketing of the Gray Market Goods.

5.   Each Defendant has ignored Plaintiffs' written demands to "Cease and Desist" their unauthorized and illegal conduct and each Defendant has still not committed to permanently Cease and Desist.  Accordingly, Plaintiffs seek injunctive relief.  In addition, Plaintiffs are entitled to damages, attorneys' fees, and costs on account of each Defendant's past and continuing behavior and misconduct.

## THE PARTIES

### Plaintiffs

6.   Plaintiff Dabur India is a corporation organized and existing under the laws of Delhi, India, having its principal place of business at Ghaziabad, Uttar Pradesh, India.  Dabur India is the fourth largest Fast Moving Consumer Goods ("FMCG") Company in India with revenues of over

US$1 Billion and market capitalization of US$5 Billion.  Dabur India today operates in key consumer product categories like Hair Care, Oral Care, Health Care, Skin Care, Home Care and Foods. Dabur India, an **ayurvedic**[1] **company** has a wide distribution network, covering 6.7 million retail outlets with a high penetration in both urban and rural markets.

7.   Plaintiff, Dabur USA, is the wholly owned United States subsidiary of Dabur India and it conducts, markets, sells, and distributes authorized Dabur India Mark products in the United States. Dabur USA is Dabur India's sole United States distributor. Plaintiffs ventured into the United States in the year 2005 and started marketing their range of consumer-packaged products which have fast become extremely popular, both among the Indian Diaspora and the local populace. Today, Plaintiffs operate in North America in key consumer products categories like Hair Care, Skin Care, Oral Care, Massage Oils, Foods & Supplements.

**Defendants**

8.   Defendant Meenaxi Enterprises Inc. ("Meenaxi Enterprises") is a registered New Jersey corporation that specializes in the "Import, Wholesale Distribution, Consumer Products, Ethnic Consumer Products, Wholesale, personal care, Retail, Household Utensils, Food & Beverage, Indian Consumer Products, FMCG, Spices & Lentils, Processed food items, Snacks, and Kitchen utensils." https://www.linkedin.com/company/meenaxi-enterprise-inc.

---

[1] Ayurveda, a natural system of medicine, originated in India more than 3,000 years ago. The term *Ayurveda* is derived from the Sanskrit words *ayur* (life) and *veda* (science or knowledge). Thus, Ayurveda translates to *knowledge of life*. Based on the idea that disease is due to an imbalance or stress in a person's consciousness, Ayurveda encourages certain lifestyle interventions and natural therapies to regain a balance between the body, mind, spirit, and the environment.  https://www.hopkinsmedicine.org/health/wellness-and-prevention/ayurveda.

9.   Meenaxi Enterprises was established in 2003 and has a principal place of business in Edison, New Jersey.  Meenaxi Enterprises transacts business in New Jersey by making significant sales within the state. https://www.dnb.com/business-directory/company-profiles.meenaxi_enterprise_inc.d0daa574bec9877479e77872da43f9b8.html.

10. Meenaxi Enterprises has a telephone number bearing New Jersey (732) area code and employs approximately 24 employees in New Jersey and 30 employees overall.   The company is described by Dun & Bradstreet as a "Food Wholesaler" and "Food Broker" that generated in $10.13MM in total revenues for the fiscal year 2020. https://www.dnb.com/business-directory/company-profiles.meenaxi_enterprise_inc.d0daa574bec9877479e77872da43f9b8.html#financials-anchor.

11.   Meenaxi Enterprises also describes itself as "into trading business (Importers & Wholesale Distributors) of Ethnic Food & FMCG products in US & Canada. We have been serving and supplying our customers with daily consumer products like spices, edible oils, pulses, lentils, confectionery, pickles, namkeens, snacks, sweets, healthy beverages, processed items, sauces, chutneys kitchen utensils, religious products, cosmetic products & personal care, ayurvedic products, kitchen utensils, among other household products. Meenaxi thrives to bring and make available quality products for the end consumer through our valued retail partners and associate /deal with products which play an influential part in their day to day lives. Our efforts are to explore enduring partnerships and serve the community with wider range of products." https://www.linkedin.com/company/meenaxi-enterprise-inc/about/.

12.  Defendant Meenaxi Gandhi ("Gandhi"), is a member of Meenaxi Enterprises, Inc. and is

5

a resident of New Jersey and transacts business in New Jersey by virtue of Meenaxi Enterprises' sales within the state and her promotion of Meenaxi Enterprises' products within the state.

13.   Upon information and belief, Gandhi manages, oversees, supervises and is responsible for the daily operations of Meenaxi Enterprises, Inc.

14.   Defendant Nupur Trading LLC ("Nupur") is a New Jersey Limited Liability Company that was established by Alka H. Amin on June 20, 2012 and has a principal place of business in South Plainfield, New Jersey.

15. Nupur transacts business in New Jersey by making significant sales within the state. Moreover, Nupur has a telephone number bearing New Jersey (908) area code. https://www.manta.com/c/mhbhhfk/nupur-trading-llc.

16. Upon information and belief, Nupur was formed to import Indian groceries and other food products from India, the United Arab Emirates, and other countries and in turn sells the products to restaurants and grocers in the United States.

17.   Nupur primarily operates in the package frozen goods business industry within the wholesale Trade – Non-durable goods sector and it describes itself as being "a total capability turnkey solution company with expertise and vast experience in the field of import." www.tradegeniusglobal.com/us-importer/nupur-trade-llc/108819.php.

18.   Upon information and belief, Defendant Alka H. Amin is a New Jersey resident and member of Nupur and transacts business in New Jersey by virtue of Nupur's sales within the state and his promotion of Nupur's products within the state.

19.    Upon information and belief, Alka H. Amin manages, oversees, supervises and is responsible for the daily operations of Nupur.

20.    Upon information and belief, Hemang S. Amin, is the husband of Alka H. Amin, was responsible for purchasing product for Nupur often assisted by Alka H. Amin.

21.    Defendant Tathastu Trading LLC ("Tathastu") is a registered New Jersey corporation with its principal place of business in South Plainfield, New Jersey.  Tathastu transacts business in New Jersey by making significant sales within the state.  Moreover, Tathastu has a telephone number bearing New Jersey (908) area code.    https://www.us-info.com/en/usa/tathastu_trading/south_plainfield/USNJ100641627-9082932513/businessdetails.aspx.

22.    Tathastu is described as an "importer and distributor of FMCG/Consumer Products in USA. We are operating in more than 30 states in USA.  We strive to bring quality products and services to customers."  www.Localjobs.sulekha.com/job-openings-in-tathastu-trading-llc-at-palinfield-nj.

23.    Upon information and belief, Defendant Rashmi Desai ("Desai") is the owner and principal of Tathastu.

24.    Upon information and belief, Desai manages, oversees, supervises and is responsible for the daily operations of Tathastu.

7

## JURISDICTION AND VENUE

25. Federal subject matter jurisdiction exists under 15 U.S.C. § 1121 and 28 U.S.C. §§1331 & 1338 for claims arising under the Inter-American Convention for Trademark and Commercial Protection Act and Section 43(a) of the Lanham Act.

26. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1131, 1138 and 1367.

27. This Court has supplemental jurisdiction over Plaintiffs' claim under N.J. Stat. 56:4-1 & 56:4-2 because this claim arises from a common nucleus of operative facts as Plaintiffs' federal claims.

28. This Court has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4 because this action arises out of the business Defendants transact in the State of New Jersey and this District, and therefore, Defendants have purposefully availed themselves of this forum. Moreover, the exercise of personal jurisdiction in this forum is reasonable given: (i) the limited burden imposed upon Defendants in pursuing this action in New Jersey where Defendants are domiciled and where many of Defendants' products are sold; (ii) New Jersey's interest in the subject matter, including unfair competition and deceptively marked goods being sold within New Jersey borders; (iii) Plaintiffs' interest in obtaining relief in New Jersey; (iv) the efficient resolution of these controversies can be secured through the prosecution of these claims in New Jersey; (v) New Jersey's shared interest with other states regarding the issues presented in this case, including

protecting trademarks and trade names and prohibiting unfair competition in interstate commerce and protecting the health and safety of its consumers, and (vi) Defendants have deliberately engaged in significant continuous business activities in New Jersey.

29. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b) because this

District has personal jurisdiction over Defendants and a substantial part of the events or

omissions giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

### A. Plaintiffs' Long-Standing and Well-Known Business

30.    Dabur India is a 135-year-old ayurvedic company which started operating in 1884 as

an ayurvedic medicines company and has become one of the largest Indian-owned consumer goods companies, renowned with the largest herbal and natural product portfolio in the world.  Dabur India is today India's most trusted name and the world's largest ayurvedic and natural health care company.

31.    Dabur India is also a world leader in Ayurveda with a portfolio of over 250

herbal/ayurvedic products. Dabur India's FMCG portfolio today includes five flagship brands with distinct brand identities -- **Dabur** as the master brand for natural healthcare products, **Vatika** for premium personal care, **Hajmola** for digestives, **Réal** for fruit juices and beverages and **Fem** for fairness bleaches and skin care products.

32.    Dabur India today operates in key consumer product categories like Hair Care, Oral Care,

Health Care, Skin Care, Home Care and Foods and has a wide distribution network, covering 6.7 million retail outlets with a high penetration in both urban and rural markets.

33.    Dabur India's products also have a huge presence in the overseas markets and are today available in over 100 countries across the globe. Its brands are highly popular in the Middle East, Africa, United States, Europe, Russia, and South Asian Association for Regional Cooperation countries ("SAARC").  Dabur India's  overseas revenue today accounts for over 27% of the total turnover.

34.    Over the many years of sales, Dabur India's Vatika, Hajmola, Réal and Fem trademarks have become renowned not only in India but also in the United States and around the world. Individuals residing in India, individuals who have travelled to India and individuals who have moved from India and southeast Asia to the United States, are familiar with the Dabur India trademarks and products sold under the Dabur, Vatika, Hajmola, Réal and Fem marks.

35. Dabur India's products are presented in an inherently distinctive trade dress which includes the Company's mark in a green stylized font against a white background.  Dabur India has employed this trade dress across its entire product line. By virtue of Dabur India's continuous and exclusive use of this trade dress over the course of many years, the general public has come to associate this packaging with Dabur India branded products. Examples of Dabur India's logo, products and brands bearing the Dabur India's distinctive marks are set forth below and, in the photographs, attached hereto as Exhibit A. The type of food contained within the packaging is often written diagonally underneath the Dabur, Vatika, Hajmola, Real and Fem marks.











36.   To protect the unique and well-known names of the Dabur India labels, Dabur India has

registered numerous trademarks and is the registered owner of the following trademarks on the

Principal Register of the United States Patent and Trademark Office ("USPTO"), all of which are

valid, subsisting, and many are incontestable pursuant to 15 U.S.C. § 1065 (all collectively, "Dabur

India Marks"):

| | TRADEMARK | REG. NO. | REG. DATE | RELEVANT GOODS |
|---|---|---|---|---|
| 1 | **fem** USA  FEM USA | 6283892 | March 2, 2021 | Non-medicated skin care preparations, namely, creams and lotions; Non-medicated hair care preparations; Depilatory preparations |
| 2 | Vatika **DermoViva**  VATIKA DERMOVIVA | 5964434 | January 21, 2020 | Cleaning preparation for household purposes; Skin bleaching preparations, namely, fairness creams and cream bleach; Non-medicated soaps; Perfumery; Essential oils; Non-medicated cosmetics; Skin care preparations, namely, creams, lotions, non-medicated rose water, toner, moisturizers; Hair care preparations; and Dentifrice. |
| 3 | DERMOVIVA  DERMOVIVA | 5964434 | January 21, 2020 | Cleaning preparation for household purposes; Skin bleaching preparations, namely, fairness creams and cream bleach; Non-medicated soaps; Perfumery; Essential oils; Non-medicated cosmetics; Skin care preparations, namely, creams, lotions, non-medicated rose water, toner, moisturizers; Hair care preparations; and Dentifrice. |
| 4 | Dabur **Herbal**  DABUR HERBAL | 5944959 | December 24, 2019 | Toothpaste and dentifrice |
| 5 | Dabur **Real**  DABUR REAL | 5846191 | August 27, 2019 | Non-alcoholic drinks, namely, fruit drinks and fruit juices; syrups and powders for making fruit beverages |
| 6 | Dabur **AMLA**  DABUR ALMA | 5760978 | May 28, 2019 | Hair care preparations, namely, shampoo, conditioners, non-medicated hair serum, and hair creams |
| 7 | Dabur **RED**  DABUR RED | 5760722 | May 28, 2019 | Toothpaste, non-medicated mouthwash, and dentifrice. |
| 8 | Dabur **MESWAK**  DABUR MESWAK | 5760721 | May 28, 2019 | Toothpaste and dentifrice |

| 9 | **Vatika** Naturals<br><br>VATIKA NATURALS | 5664648 | January 29, 2019 | Cleaning preparation for household purposes; Skin bleaching preparations, namely, fairness creams and cream bleach; Non-medicated soaps; Perfumery; Essential oils; Non-medicated cosmetics; Skin care preparations, namely, creams, lotions, non-medicated rose water, toner, moisturizers; Hair care preparations; and Dentifrice |
| 10 | **Dabur**<br><br>DABUR | 5607230 | November 13, 2018 | Massage oils; hair oil; and dentifrices |
| 111 | DABUR CHYAWANPRASH<br><br>*DABUR CHYAWANPRASH | 4513810 | April 15, 2014 | Dietary and nutritional supplement containing herbs and spices; herbal products, namely, ayurvedic herbal supplements |
| 12 | **DABUR**<br><br>*DABUR | 4388083 | August 20, 2013 | Toiletry preparations, namely, toothpaste; tooth powder; dentifrices; tooth cleaning preparations; tooth gel; tooth polishes; tooth whitening preparations; tooth whitening creams; tooth whitening pastes; tooth whitening gels; cosmetic preparations for the care of mouth and teeth |
| 13 | **DABUR**<br><br>*DABUR | 4395556 | September 3, 2013 | Fruit juices |
| 14 | Real **activ**<br>REAL ACTIV | 5253455 | August 1, 2017 | Non-alcoholic drinks, namely, fruit drinks and fruit juices; syrups and other preparations for making fruit beverages |
| 15 | JAQULINE USA<br><br>JAQULINE USA | 5139619 | February 14, 2017 | Cream bleach for cosmetic purposes; hair removing cream; wax strips for removing body hair; peel off facial masks; cosmetic preparations; perfumes; essential oils for use in the manufacture of scented products; essential oils; hair oils and hair lotions; non-medicated soaps; non-medicated skin creams and lotions; cosmetic bleaching preparations; coloring preparations for the hair; hair dye; rouge; deodorants; non-medicated toiletries; oils for toiletry purposes; soaps for toiletry purposes; blended rose oil for cosmetic purposes; shampoos; talcum powders; face powders and compacts; cologne; moisturizing lotions; toothpaste; toothpowder and dentifrices |
| 16 | **FEM USA**<br><br>FEM USA | 5139618 | February 14, 2017 | Cosmetic preparations; perfumes; essential oils for use in the manufacture of scented products; essential oils; hair oils and hair lotions; non-medicated soaps; non-medicated skin creams and lotions; bleaching preparations for hair and cosmetic |

13

| | | | | |
|---|---|---|---|---|
| | | | | use; coloring preparations for hair; hair dye; rouge; deodorants; non-medicated toiletries; oils for toiletry purposes; soaps for toiletry purposes; blended rose oil for cosmetic purposes; shampoos; talcum powders; face powders and compacts; cologne; moisturizing lotions; toothpaste; toothpowder and dentifrices |
| 17 | (logo) *FEM | 2881353 | September 7, 2004 | Cosmetics, namely, face and body creams, skin creams, cold creams, cleaning lotions and creams, [moisturizing lotions and creams, talcum powder, face powders and compacts, lipstick and mascara, nail polish; beauty aids, namely, face and eye make-up, and rouge; toilet and bath soaps, liquid soaps, deodorant soaps, bath salts, hair oils and hair lotions, ]hair dye, hair bleaching creams, bleaching preparations and coloring matters for hair[; hair growing preparations and washes; hair shampoos, dentifrice; dental whitening agents and creams; tooth paste; perfumes and perfumery compounds, essential oils for personal use; after-shave lotions, Eu-De cologne, attars, blended rosa oil, deodorants, fabric softeners, fabric conditioners, optical whitening preparations, washing soaps, detergents and washing powder, laundry bluing, laundry bleach, laundry pre-soak, laundry stain removers |
| 18 | DABUR AMLA *DABUR ALMA | 3669031 | August 18, 2009 | Hair oil |
| 19 | DABUR *DABUR | 3530166 | November 11, 2008 | Edible oils |
| 20 | HAJMOLA *HAJMOLA | 3530166 | November 11, 2008 | Ayurvedic preparations, namely, herbal supplement tablets for use as digestive aids and medicated candies |
| 21 | VATIKA *VATIKA | 3529736 | November 11, 2008 | Cleaning, polishing, scouring, and abrasive preparations, namely, general purpose cleaning, polishing, and abrasive liquids and powders and cleaning, polishing, and scouring preparations;] soaps, [ perfumery, essential oils,] cosmetics and non-medicated toiletries, hair lotions and hair care preparations, [dentifrices and tooth cleaning preparations] |
| 22 | Dabur | 3529735 | November 11, 2008 | [Coffee] tea; [cocoa, sugar, rice, tapioca, sago,] artificial coffee, [ flour and preparations made from cereals, namely, ready to eat, cereal derived food bars and cereal based snack food; bread, pastry and] confectionery, namely, candy and candies |

| | | | | |
|---|---|---|---|---|
| | *DABUR | | | for digestion; [flavored ices,] honey [treacle, yeast, baking powder, salt, mustard, vinegar, sauces, and condiments, namely, ketchup and chili sauce; spices, ice] |
| 23 | HAJMOLA<br><br>*HAJMOLA | 3529734 | November 11, 2008 | [Coffee, tea; cocoa, sugar, rice, tapioca, sago, artificial coffee, flour, and preparations made from cereals, namely, ready to eat, cereal derived food bars and cereal based snack food; bread, pastry and] confectionery, namely, candy and candies for digestion [flavored ices, honey, treacle, yeast, baking powder, salt, mustard, vinegar, sauces, and condiments, namely, ketchup and chili sauce; spices, ice] |
| 24 | Typed Drawing<br><br>*DABUR | 2628528 | October 1, 2002 | Ayurvedic preparations, namely, herbs for medicinal purposes, astringents for medicinal purposes and rubbing compounds for therapeutic use; and a full line of pharmaceutical [and veterinary] preparations. |
| 25 | Typed Drawing<br>*DABUR | 18790384 | April 18, 1995 | Hair oil |
| 28 | * | 1841132 | June 21, 1994 | Hair oil |

*Registrations are "incontestable." (True and correct of the registration certificates are attached hereto as Exhibit B).

37.     These registrations are valid and subsisting and many are incontestable and constitute conclusive evidence of Dabur India's exclusive right to use the Dabur India Marks for the goods specified in the registrations. 15 U.S.C. §§ 1065, 1115(b).

38.     Since 2005, Dabur India has spent hundreds of millions dollars on advertising and promoting the Dabur India family of products and the Dabur India Marks in the United States.

39.     Not only has Dabur India protected its Dabur India brands by registering the trademarks, but it has also taken reasonable efforts to monitor and protect their brand against improper resale.

40.     Knowledge of Dabur India's Marks, trade dress and consistent label design has grown more widespread as Dabur India has advertised and promoted its products under the Dabur India Marks  at trade shows around the world, including in the United States. Plaintiffs also maintain a website that is accessible by the public, including consumers in the United States, at www.dabur-usa.com.

41.     The Dabur India Marks, labeling, trade dress and packaging theme are well-known with valuable goodwill belonging exclusively to Dabur India.

42.     Dabur India imposes contractual obligations on its authorized distributors to avoid gray-market resales.  It does so because such resale can erode Dabur India's brand for quality assurance and its safety net to maintain high reliability, 24/7, for years.

43.     In addition to its activities in the United States, Dabur India and its related entities are engaged in the manufacture, distribution, sale, and marketing of consumer goods bearing the Dabur Marks that are only authorized for sale in specific foreign countries or regions.

44.     Gray Market Dabur Goods are tailored to specific geographic regions or countries to reflect differences in terms of language, government regulations, and units of measurement, among other things.

45.     Dabur USA is a subsidiary of Dabur India and is the exclusive U.S. marketing agent for all of Dabur India's authorized U.S. products.

46.     Dabur India and its related entities appoint distributors or agents in the various geographic regions or countries to maintain the quality associated with products bearing the Dabur Marks within each particular region or country.

16

47.     Gray Market Goods are not authorized or intended for exportation out of its intended region or country, or for importation into, sale, marketing, or distribution in the United States. Examples of Dabur India's "Export Pack", which are the Dabur India's products that are exported to the U.S. bearing a gold foiled hologram "Dabur USA Canada Export" and meets all FDA regulations are indicated below along with the corresponding Gray Market products which are made exclusively for sale in India.

**EXPORT PACK**                                    **GRAY MARKET**



**Gold Foil Hologram**



**Gold Foil Hologram**

17




**EXPORT PACK**                                                    **Gold Foil Hologram**



**GRAY MARKET**



18

48.     Dabur India takes reasonable steps to investigate when it is informed of violations of this policy in order to protect its brand.

49.     Upon information and belief, the corporate Defendants, through their members, launched their respective companies as the result of their observations that there was a demand for specialty products from India in the tri-state area, which is home to a large population of Indian Americans.[2]

50.     Upon information and belief, U.S. consumers travelling to and from India and Americans of Indian descent from South Asian origins are familiar with the Dabur India Marks and have brought Dabur India branded products into the United States.

51.     Each Defendant, at the direction of their members, have targeted consumers in the tri-state region and Defendants' deceptive products can also be found for sale in this region.

52.     Each Defendant uses the Dabur India Marks, trade dress and labels to confuse consumers, including those familiar with Plaintiffs' renowned marks, that Defendants' Unauthorized Dabur Gray Market Goods are from the same source as Dabur India's exported goods sold under the Dabur India Marks. As a result, Defendants' use of the Dabur India Marks is likely to cause confusion.

---

[2] According to the 2010 Census, over 4.16 million Indian Americans live in the US with 387,244 in New Jersey, 379,439 in New York and nearly 150,000 live in Pennsylvania. American Community Survey 2018, AAPI Data and news sources.  https://aapidata.com/censusmaps/

53.     Commencing prior to and/or about December 2019, Defendants Meenaxi Enterprises and Gandhi, launched an unauthorized   program to obtain a free ride and capitalize upon the goodwill generated over the course of decades for Dabur India's widely recognized quality products and its renowned Dabur India Marks. Thus, Meenaxi Enterprises, at the direction of their members, began to sell Unauthorized Dabur Gray Market Goods in the United States similar to those sold by Plaintiff in India and elsewhere. (Attached hereto as Exhibit C, are pages from a Meenaxi Enterprise, Inc.'s Price List that contains the unauthorized Dabur  Gray Market Goods).

54.     Commencing prior to and/or about December 2019, Defendants Nupur, Alka H. Amin, Hemang S. Amin, launched an unauthorized   program to obtain a free ride and capitalize upon the goodwill generated over the course of decades for Dabur India's widely recognized quality products and its renowned Dabur India Marks. Thus, Nupur, at the direction of their members, began to sell Unauthorized Dabur Gray Market Goods in the United States similar to those sold by Plaintiff in India and elsewhere. (Attached hereto as Exhibit D, are pages from a 12/14/19 Nupur Trading LLC's Price List that contains the unauthorized Dabur  Gray Market Goods (highlighted)).

55.     Commencing prior to and/or about December 2019, Defendants Tathastu and Desai, launched an unauthorized   program to obtain a free ride and capitalize upon the goodwill generated over the course of decades for Dabur India's widely recognized quality products and its renowned Dabur India Marks. Thus, Tathastu, at the direction of their members, began to sell Unauthorized Dabur Gray Market Goods in the United States similar to those sold by Plaintiff in India and elsewhere.  (Attached hereto as Exhibit E are pages from 11/9/19 and 5/15/201 Tathastu

20

Trading LLC's Price Lists that contains the unauthorized Dabur  Gray Market Goods (highlighted)).

56.     Each Defendant's unauthorized sale in the U.S. of Dabur India products damages Dabur India's goodwill and reputation that it has built, marketed, and promoted throughout the years.

57.     Each Defendant's aforesaid actions have damaged Plaintiffs, and unless enjoined will continue to damage, Plaintiffs' reputation, foreclose and impair any future sales by Plaintiff of its authorized Dabur India Mark  products in the U.S. and impair the current and future sales of Plaintiffs' Dabur India-Mark products in the U.S.

## B. **Defendants Accused Activities**

58.     Dabur  India accuses each of the Defendants of infringing its Dabur India Marks through the importation, selling and distribution of Dabur India's  Gray Market Goods.

59.     Upon information and belief, Meenaxi Enterprises and Gandhi, actively sought, pursued, and engaged in the importation, distribution, and sale of Dabur India's gray market goods in an effort to confuse customers into believing that their sale of the Gray Market Goods is authorized by Dabur India and to profit off Dabur India's goodwill.

60.     The Meenaxi Defendants, through counsel, Baker & Rannells, PA, admitted that they are "not now dealing with any Dabur products… and is willing to sign an undertaking not to deal in Dabur products.

61.     Upon information and belief, Nupur, Alka H. Amin and Hemang S. Amin, actively sought, pursued, and engaged in the importation, distribution, and sale of Dabur India's gray

market goods in an effort to confuse customers into believing that their sale of the Gray Market Goods is authorized by Dabur India and to profit off Dabur India's goodwill.

62.     Upon information and belief, Tathastu and Desai, actively sought, pursued, and engaged in the importation, distribution, and sale of Dabur India's gray market goods in an effort to confuse customers into believing that their sale of the Gray Market Goods is authorized by Dabur India and to profit off Dabur India's goodwill.  (Attached hereto as Exhibit F, is the email communication from Jack Rannells, Esq. to Mark J. Ingber, Esq. dated June 30, 2021).

**Defendants Are Profiting Off of Dabur India's Marks**

63.     Each Defendant at the direction of their members, sells, promotes, distributes, and authorizes, or otherwise contributes to the importation, sale, promotion and/or distribution by others of Unauthorized Dabur Gray Market Goods that are intended for sale in India and not authorized for sale in the U.S.

64.     The Gray Market Goods intended for sale in India, which each Defendants sells within the U.S. are materially different in many respects from the product authorized for sale in the U.S. For example, the Unauthorized Dabur Gray Market Goods:

a.     Do not travel through authorized supply chains and are therefore not subject to     Dabur India's quality control standards such as transporting Dabur India products in climate-controlled containers or in a manner that ensures the packaged goods do not get damaged and/or destroyed during transit which may result in a product that looks to be an inferior product;

b.   Do not contain the adequate UPC Code to track the product in case of a recall.

c.   Presents nutrition information in a manner that does not comply with FDA requirements;

22

    d.   Are missing beverage container deposit information required by several U.S. states;

    e.   Includes variation on English spelling that is different from American English such as "colour" versus "color" which American consumers are unfamiliar with;

    f.   Contain many labels that are often in Hindi which are indicative of Gray Market Goods.

    g.   Presents volume and nutrition information using the metric system instead of the standard system of measurement that U.S. consumers recognize; and

    h.   Missing the U.S. toll-free number for consumers to contact Plaintiffs in case of questions or concerns.

65.    Additionally, Dabur India contractually prohibits resale of its products to unauthorized resellers, like Meenaxi, Nupur and Tathastu, and actively monitors its distribution chain to prevent such resale.  Defendants, at the direction of their members, must therefore conceal the nature of their purchases through a behavior of misrepresentation[3] to Dabur India's  customers.

66.    To ensure that only its authorized goods—that is, those with warranties and customer service extras—are sold in the U.S., Dabur India has limited distribution of its U.S. goods

---

[3] By virtue of the inclusion of Dabur India Mark products, not obtained from Dabur India's sole U.S. Distributor, Dabur USA, on their respective Price Lists, each Defendant knew that the listed Dabur India Mark products were Unauthorized Dabur Gray Market Goods and deliberately introduced them into the U.S. stream of commerce in an effort to confuse  customers into believing that their sale of the Gray Market Goods is authorized by Plaintiffs. See Exhibit C.

by creating a network of authorized distributors that are, besides itself, the exclusive suppliers of its U.S. goods.

67.     Dabur India asserts that the Defendants are not authorized dealers of Dabur India Mark goods in the U.S.; a fact which the Defendants cannot dispute. Because of that, Dabur asserts that the Defendants' Gray Market Goods necessarily lack the quality and safety control and other quality benefits of authorized dealerships-sold Dabur goods, which make Defendants' Gray Market Goods inferior and confuses the consumer as to source.

68.     The Defendants have each engaged in an ongoing  behavior to create, expand, exploit, and perpetuate an unauthorized gray market specifically in Dabur India Mark products.

69.     Precisely because each Defendant plan to procure, distribute and sell unauthorized Dabur India's  Gray Market Goods have been hidden by secrecy and confusion, its scope has been hard to detect.

70.     Upon information and belief, Defendants are marketing, advertising, and selling Gray Market Goods using Dabur India's Marks.  Examples of Defendants' sale of Gray Market Goods ("India Pack") and Dabur India's  export products ("Export Pack") are set forth above in paragraph 43.

71.     Upon information and belief, the Gray Market Goods being sold by Defendants are Unauthorized Dabur Gray Market Goods .

72.  There are a number of material differences between genuine Dabur India products and non-genuine unauthorized Gray Market Goods being sold by Defendants.

73.     Unauthorized sales in the U.S. of Gray Market Goods that differ materially from authorized Dabur India Mark products sold in the U.S. results in consumer confusion as to the authenticity of the materially different products.

74.     Upon information and belief, Defendants intentionally promote, sell, and distribute Gray Market Goods to unsuspecting customers of Plaintiffs profiting off Dabur India's Plaintiffs' name, reputation, and goodwill.

**Lack of Dabur India Quality Control by Defendants' Unauthorized Sources**

75.     Quality is of critical importance to customers who purchase Dabur India Mark products.

76.     Unscheduled down time often carries enormous costs for users of Dabur India Mark products. One key reason that customers choose Dabur India over Dabur India's its competitors is because of Dabur India's commitment to quality and reliability.

77.     To maintain the high quality of goods bearing its Dabur India Marks, Dabur India maintains an authorized network of distributors for the sale of genuine, authorized Dabur India Mark products . These authorized distributors have been trained and authorized by Dabur to sell genuine, authorized Dabur India Mark products to end customers.

78.     Genuine, authorized Dabur India Mark products are sold by Dabur India itself and through its authorized distributors to ensure that Dabur India's legitimate, substantial, and non-pretextual quality control procedures are followed.

79.    Dabur India does not warrant Dabur India Mark products Gray Market Goods sold outside its authorized distribution network, where proper handling procedures cannot be verified by Dabur India.

80.    Upon information and belief, each Defendant receives Gray Market Goods from unauthorized sources and sells them in the U.S.

81.    Each Defendant 's unauthorized sources are unknown to Plaintiffs. As a result, Plaintiffs are unable to ensure that the quality of any  Gray Market Goods that are handled, packaged, preserved, shipped, purged (or not purged), and/or stored by these unknown sources is sufficient and in accordance with Dabur India's quality control standards.

82.    To address these concerns and to maintain the high quality of goods bearing Dabur India's Marks, Dabur India follows quality control procedures to control the handling, packaging, preservation, shipping, purge, and storage of Dabur India Mark products.

83.    These procedures ensure the high quality of Dabur India products, prevent damage and deterioration of those products, and ensure the safety of the handlers and users.

84.    Dabur India regularly updates its quality control procedures and expends significant resources upholding its quality control procedures.

85.    Dabur India has policies and personnel to make sure that Dabur India Mark products are packaged and shipped in such a way to ensure that such  products are, and continue to be, safe and of the highest quality.

86.    Using those policies and personnel, Dabur India has substantial quality control procedures in place concerning the shipping and handling of Dabur India Mark products .

87.     For example, Dabur India follows procedures for the use of particular moisture-controlled packaging (though use of particular barrier materials) in order to guard against degradation in Dabur India Mark products.

88.     Dabur India also follows procedures concerning how multiple products are boxed and/or placed on pallets to ensure that the products will be transported safely and without damage.

89.     Dabur India also follows procedures concerning additional protective packaging used in the shipment of Dabur India Mark products internationally.

90.     In addition, Dabur India uses a number of other post-manufacture quality control procedures in order to ensure that Dabur India Mark products are, and continue to be, safe and of the highest quality. Many of these quality control procedures are described in more detail elsewhere in this Complaint, including (a) the requirement that Dabur India Mark products be sold only directly by Dabur India or by its authorized distributors; (b) the existence of factory seals on Dabur India Mark products which indicate if a product has been opened or otherwise tampered with; (c) Dabur India's provision of customer support to customers of Dabur India Mark products; (d) Dabur India's sending of product safety notices directly to customers, as needed; (e) Dabur India's sending of product recall notices directly to customers, as needed; (f) and Dabur India's provision of a Dabur  India Warranty to customers.

91.     Upon information and belief, each Defendant's unauthorized sources do not follow Dabur India's quality control procedures.

92.     Given that each Defendant's unauthorized sources do not adhere to all of Dabur India's procedures, many of the Gray Market Goods will be of different and/or subpar quality, in comparison with genuine, authorized Dabur India products.

93.     Dabur India also uses other quality control procedures in place to ensure that Dabur India Mark products are, and continue to be, safe and of the highest quality. In addition, for example, Dabur India and its authorized distributors have quality control procedures in place that require that, from time-to-time, certain Dabur India Mark products that have quality issues be removed from inventory in order to ensure that those products are not sold to customers.

94.     Upon information and belief, each of the Defendant's unauthorized sources do not follow these Dabur India procedures to remove Dabur India Mark products with quality issues from their (or Defendants') inventory. Given that Defendants' unauthorized sources do not adhere to these Dabur India procedures, many of the Gray Market Goods will be of different and/or subpar quality, in comparison with genuine, authorized Dabur India Mark products.

95.     If all of Dabur India's quality control procedures are not followed, the products being sold can be damaged, weakened, sold when they should not have been sold due to product safety concerns, or otherwise compromised.

96.     Accordingly, buyers of Gray Market Goods sold by each Defendant receives products that have been handled, packaged, preserved, shipped, purged (or not purged), and/or stored by these unauthorized sources in a manner that is different from Dabur India's quality control procedures.

97.     Given that each Defendant's unauthorized sources do not adhere to all of Dabur India's quality control procedures, and since Dabur India is unable to oversee quality control procedures with respect to the Gray Market Goods, many of those products will be of different and/or subpar quality, in comparison with genuine, authorized Dabur India Mark products.

98.     The sale of Gray Market Goods that do not conform to Dabur India's quality control procedures diminishes the value of the Dabur India's Marks.

99.     Consumers are therefore likely to consider this difference between genuine, authorized Dabur India Mark products and Gray Market Goods to be relevant to a decision about whether to purchase the products.

100.    This difference creates a presumption that consumer confusion is caused by the Gray Market Goods.   This difference constitutes a material difference between the Gray Market Goods and genuine, authorized Dabur  India Mark products, as it erodes the goodwill represented by Dabur India's Marks, and it renders the Gray Market Goods as infringing products under U.S. trademark laws.

**Lack of Dabur India Quality Control by Defendants**

101.    Upon information and belief, each of the Defendants, like the unauthorized sources, also do not follow all of Dabur India's quality control procedures, including all of the quality control procedures outlined in more detail above and elsewhere in this Complaint.

102.    As a result, Dabur India is unable to ensure that the quality of any Gray Market Goods that are handled, packaged, preserved, shipped, purged (or not purged), and/or stored by each Defendant is sufficient and in accordance with Dabur India's  quality control standards.

29

103.     If all of Dabur India's quality control standards are not followed by Defendants,

the products being sold can be damaged, weakened, sold when they should not have been sold due

to product safety concerns, or otherwise compromised.

104.     Accordingly, buyers of Gray Market Goods sold by each Defendant receive

products that have been handled, packaged, preserved, shipped, purged (or not purged), and/or

stored by each Defendant in a manner that is different from  Dabur India's quality control

procedures.

105.     As described above, Dabur India has a number of post-manufacture quality control

procedures in place in order to ensure that Dabur India Mark products are, and continue to be, safe

and of the highest quality.

106.     In addition, as described above, Dabur India also has a number of quality control

measures relating to the packaging and shipping of the products, as well as policies and procedures

to remove products from inventory that have quality issues.

107.     Just like each Defendant's unauthorized sources, upon information and belief,

Defendants do not follow all of these Dabur India procedures with respect to the Gray Market

Goods .

108.     Given that each Defendant does not adhere to all of these Dabur procedures, many

of the Gray Market Goods will be of different and/or subpar quality, in comparison with genuine,

authorized Dabur India Mark products .

109.     The sale of Gray Market Goods by each Defendant that does not conform to Dabur

India's  quality control procedures diminishes the value of Dabur India's Marks.

110.    Consumers have been confused and complained about Defendants' Gray Market Goods. For example, one U.S. consumer was so confused as to which product is legitimate that he sent an email to Dabur India on December 15, 2020 stating "I am writing to confirm that the products sold under Dabur-USA are actually original Dabur India Mark products . I will appreciate it if you can provide a confirmation or deny your association to Dabur-USA and possibly take actions to prevent such misuse of the Dabur brand. (Email attached hereto as Exhibit G).

111.    Consumers are likely to consider this difference between genuine, authorized Dabur India Mark products and Defendants' Gray Market Goods to be relevant to a decision about whether to purchase the products.

112.    This difference creates a presumption that consumer confusion is caused by the Gray Market Goods  .

113.    This difference constitutes a material difference between Gray Market Goods and genuine, authorized Dabur India Mark products, it erodes the goodwill represented by the Dabur India Marks, and it renders the Gray Market Goods as infringing products under U.S. trademark laws.

**Differences in Customer Support**

114.    Dabur India provides customer support in connection with the sale of genuine, authorized Dabur India Mark products.

115.    In the event that Dabur India learns that a customer has purchased a product from an unauthorized source such as those from each Defendant, Dabur India has in the past and continues to reserve the right to refuse to provide customer support to such customers.

31

116.    Consumers are likely to consider this difference between genuine, authorized Dabur India Mark products and Gray Market Goods to be relevant to a decision about whether to purchase the products.

117.    This difference creates a presumption that consumer confusion is caused by the Gray Market Goods .

118.    This difference constitutes a material difference between Gray Market Goods and genuine, authorized Dabur India Mark products, it erodes the goodwill represented by Dabur India's Marks, and it renders the Gray Market Goods as infringing products under U.S. trademark laws.

**Lack of Product Safety Notices**

119.    Customers who purchase genuine, authorized Dabur India Mark products directly from Dabur India or a Dabur India authorized distributor such as Dabur USA, routinely provide contact information to  Plaintiffs so that those customers can be provided with, among other things, updated product information.

120.    With respect to genuine, authorized Dabur India Mark products, from time to time, Dabur India provides notices to customers in the event of an advisory concerning the safety or proper use of such products. Dabur India provides such product safety notices (referred to as either a "Product Notice" or "Product Safety Advisory") via mail, electronic mail, or other means to those customers who purchased those products directly from Dabur India or one of its authorized distributors.

121.    When a customer purchases Gray Market Goods from the corporate Defendants, that customer's sale and contact information is not provided to Dabur India. Therefore, purchasers of Gray Market Goods from the corporate Defendants do not receive product safety notices from Dabur India in the manner that purchasers of genuine, authorized Dabur India Mark products do.

122.    Upon information and belief, the Defendants do not provide product safety notices via mail, electronic mail, or other means with respect to the Gray Market Goods . In contrast, buyers of genuine, authorized Dabur India Mark products routinely receive such notices, as described more fully above.

123.    Consumers are likely to consider this difference between genuine, authorized Dabur India Mark products and Gray Market Goods to be relevant to a decision about whether to purchase the products.

124.    This difference creates a presumption that consumer confusion is caused by the Gray Market Goods  .

125.    This difference constitutes a material difference between Gray Market Goods and genuine, authorized Dabur India Mark products, it erodes the goodwill represented by Dabur India's Marks, and it renders the Gray Market Goods as infringing products under U.S. trademark laws.

**Lack of Product Recall Notices**

126.    Customers who purchase genuine, authorized Dabur India Mark products directly from Dabur India or a Dabur authorized distributor such as Dabur USA, routinely provide contact

information to Dabur India and/or its authorized distributor so that those customers can be provided with, among other things, updated product information.

127.   With respect to genuine, authorized Dabur India Mark products, from time to time, Dabur India provides a Product Safety Advisory to customers in the event a given product is recalled. Dabur India provides such recall notices via mail, electronic mail, or other means to those customers who purchased those products directly from Dabur India or one of its authorized distributors.

128.    When a customer purchases Gray Market Goods from Defendants, that customer's sale and contact information is not provided to Dabur India. Therefore, purchasers of Gray Market Goods do not receive recall notices from Dabur India in the manner that purchasers of genuine, authorized Dabur India Mark products do.

129.   Upon information and belief, none of the Defendants provide recall notices via mail, electronic mail, or other means with respect to the Gray Market Goods  . In contrast, buyers of genuine, authorized Dabur India Mark products routinely receive such notices, as described more fully above.

130.   Consumers are likely to consider this difference between genuine, authorized Dabur India Mark products and Gray Market Goods to be relevant to a decision about whether to purchase the products.

131.   This difference creates a presumption that consumer confusion is caused by the Gray Market Goods .

132.   This difference constitutes a material difference between Gray Market Goods and

genuine, authorized Dabur India Mark products, it erodes the goodwill represented by Dabur India's Marks, and it renders the Gray Market Goods as infringing products under U.S. trademark laws.

**Other Material Differences**

133.    Dabur India's research as to the differences between Gray Market Goods sold by each corporate Defendant and genuine, authorized Dabur India Mark products is ongoing. Any other material differences that exist between Gray Market Goods and genuine, authorized

134.    Dabur India Mark products will also create a presumption of customer confusion, erode the goodwill represented by Plaintiffs' Trademarks, and render the Gray Market Goods as infringing products under U.S. trademark laws.

**Selling Materially Different Products Without Disclosing Those Differences**

135.    As has been set forth in detail above, there are many material differences between the Gray Market Goods sold by Defendants and legitimate Dabur India Mark products .

136.    In marketing and selling the Gray Market Goods, Defendants fail to disclose the multiple ways in which the Gray Market Goods differ from legitimate goods. Defendants' failure to do so is likely to confuse consumers into believing that they are purchasing legitimate Dabur India Mark products when, in fact, they are not.

**Defendants' False Designation of Origin**

137.    In selling the Gray Market Goods, the purchasing public is likely to attribute to each Defendants' use of  Dabur India's Marks as a source of origin, authorization and/or sponsorship for the products they sell and, further, purchase each Defendant's products in the

erroneous belief that Defendants are authorized by, associated with, sponsored by, or affiliated with Dabur India, when the Defendants are not.

138.   Each Defendant has made, and continues to make, false and/or misleading statements with the intent to cause confusion and mistake, and to deceive the public into believing that they are authorized by, associated with, sponsored by, or affiliated with Dabur, when they are not. Dabur India has been damaged as a result.

139.   Each Defendant's sale of Gray Market Goods is likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that these products containing Dabur India's Marks are authorized by and backed by Dabur India, when, in fact, they are not. The likelihood of confusion, mistake, and deception caused by Defendants' sale of Gray Market Goods is causing irreparable harm to Dabur India.

140.   Purchasers and prospective purchasers of each Defendant's Gray Market Goods who perceive a defect, lack of quality, or any impropriety are likely to mistakenly attribute them to Dabur India. In addition, due to the highly specialized and technical nature of these products, Defendants' sale of the Gray Market Goods poses a significant risk to the goodwill in Plaintiffs' Trademarks and to the high regard in which those marks are held by potential buyers of these products. By causing such a likelihood of confusion, mistake, deception, and potential injury, Defendants are inflicting irreparable harm to Plaintiffs' reputation and goodwill and impairing the efficacy of Dabur India's  quality control efforts.

141.   Each Defendant's  unlawful conduct will continue to harm Dabur and deceive the public during the pendency of the case unless the Court issues a preliminary injunction to prevent such unlawful conduct.

36

**Defendants' Refusal to Cease Their Misconduct**

142.    On or about January 5, 2021, Plaintiffs notified each corporate Defendant, in writing, via Certified Mail, of their unlawful conduct, including that each Defendant is committing both false advertising and trademark infringement in selling the Gray Market Goods. The Letters remain unanswered and unresponsive to date.  (January 5, 2021, Cease and Desist Letters from Mark J. Ingber, Esq., (Dabur), to each corporate Defendant are attached hereto as Exhibit H).

143.    These letters demanded that the corporate Defendants inform Plaintiffs  whether they intended to cease purchasing and selling Gray Market Goods.   Despite this notification, each Defendant failed to respond or cease their unlawful conduct. (The USPS Tracking History evidencing delivery to the corporate Defendants are attached hereto as Exhibit I).

144.    Each Defendant thus continues, through the pendency of this litigation and up through the present, to obtain and sell Unauthorized Dabur Gray Market Goods to consumers under false pretenses.

**Adverse Effects to Dabur India Stemming From Defendants' Unlawful Conduct**

145.    Dabur India, which sells products throughout the United States and around the world, has spent millions of dollars to create and ensure continued goodwill and loyalty among its customers and authorized distributors.

146.    To achieve goodwill and loyalty from its customers, Dabur India expends considerable resources to ensure the quality of its products, in part by performing repairs under warranty and product recalls.

147.     By selling Gray Market Goods, each Defendant creates a strong likelihood of confusion among Plaintiffs' customers, which has an adverse economic impact, not only on Dabur India, but also on Dabur India's  consumers across the United States, who have purchased Gray Market Goods from each Defendant.

148.     Similarly, to achieve goodwill and loyalty with its authorized distributors, Dabur India works hard to set fair prices. Gray Market Goods sold by each Defendant contain a number of material differences from genuine products, and Defendants are able to price the Gray Market Goods well below the price that Dabur India's  authorized distributors in the United States, including Dabur USA are able to charge. As a result, each Defendant's conduct injures not only Dabur India and its customers but also Dabur India's  authorized distributors throughout the United States, including Dabur USA, who lose a sale every time each Defendant knowingly sells any of the Gray Market Goods at below-market prices.

149.     In addition, the price at which Dabur India sells its products to its authorized distributors is based, in part, on the end use of those products. Each Defendant cause third-parties to falsely brand themselves as value-added resellers entitled to discounts, causing Dabur India to sell the parts destined for each Defendant to its authorized distributors at a lower price than it would sell parts destined for end users. Each Defendants are then able to underbid Dabur India's authorized distributors, including Dabur USA – who would have paid Dabur India the full price – and cause it to lose sales at full price.

150.     In addition, knowing that each Defendant can sell Gray Market Goods far below the price that Dabur India's  authorized distributors can sell legitimate products from Dabur India, each Defendant's conduct further harms Dabur India's  authorized distributors, including Dabur

USA. Furthermore, each Defendant's sale of the Gray Market Goods harms both Dabur India and its authorized distributors, given that each Defendant's unlawful conduct results in pressure for prices to be reduced on legitimate Dabur India Mark products .

151.    The Defendants are unfairly competing with Dabur India and its authorized distributors, including Dabur USA, creating a substantial likelihood of confusion, and causing mistake and deception in consumers' minds, because the Gray Market Goods  , although physically similar to legitimate Dabur India Mark products, are materially different from legitimate Dabur India Mark products .

152.    Accordingly, as a result of each Defendant's continued sale of Gray Market Goods, Plaintiffs have suffered, and will continue to suffer, irreparable harm to their goodwill and reputation with both their customers and their authorized distributors, for which there is no adequate remedy at law. Moreover, this harm will have a negative effect on interstate commerce, given that Dabur India's  products are sold across the United States.

153.    In addition, Each Defendant's acquisition and sale of Gray Market Goods hinders Dabur India's  ability to track its products, thereby potentially endangering the public by preventing Dabur from resolving quality problems and recalling defective products.

154.    Due to the nature and uses of the products at issue, which, as described more fully above, are used in critical infrastructure and other sensitive equipment, each Defendant's sale of Gray Market Goods poses a serious risk to public health and safety. By causing such a likelihood of confusion, mistake, deception, and potential public health risk, each Defendant is inflicting irreparable harm to public health and welfare.

## FIRST CAUSE OF ACTION

## <u>Trademark Infringement Pursuant to 15 U.S.C. § 1114</u>

155.    Plaintiffs restate and re-allege each and every allegation set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

156.    As alleged more fully herein, the US Trademark Office has granted Dabur India federal trademark registrations for its' Dabur India Marks.

157.    Each Defendant's sales and attempted sales of Unauthorized Dabur Gray Market Goods including the Dabur India Marks to unsuspecting consumers is a violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

158.    Each Defendant's sale and continued sale of Gray Market Goods has created a substantial likelihood of confusion and caused mistake and deception in consumers' minds because the unauthorized products, although physically similar to legitimate Dabur India Mark products , are materially different from the legitimate Dabur India Mark products .

159.    Each Defendant's unauthorized use of the Dabur India Marks constitutes use in commerce, without the consent of Dabur India, of a reproduction, counterfeit, copy, or colorable imitation of the Dabur India Marks in connection with the advertisement, promotion, sale, and distribution of products and/or services.  Such use is likely to cause confusion or mistake, or to deceive customers, and therefore infringes Plaintiffs' Trademarks, in violation of 15 U.S.C. § 1114(1).

160.    As a result of each Defendant continued sale of Gray Market Goods, Dabur has suffered and will continue to suffer irreparable harm to its goodwill and reputation with not only

its customers, who confuse the unauthorized Dabur India Mark products or legitimate Dabur India Mark products , but also with its authorized distributors, including Dabur USA, whose prices each Defendant is able to undercut by selling Gray Market Goods .

161.    Each Defendant's acts greatly and irreparably damage Plaintiffs and will continue to so damage Plaintiffs unless restrained by this Court; wherefore, Plaintiffs are without an adequate remedy at law for the above immediate and continuing harm. Accordingly, Plaintiffs have been, and absent injunctive relief will continue to be irreparably harmed by each Defendant's actions.

162.    Therefore, Plaintiffs are entitled to, among other things, an order enjoining and restraining each Defendant from selling any Gray Market Goods, including, but not limited to, products intended for sale in India, as well as to each Defendant's profits, Plaintiffs' reasonable attorneys' fees and any other remedies provided by 15 U.S.C. § 1116 and 1117.

## SECOND CAUSE OF ACTION
### False Advertising Pursuant to Section 43(a) of the
### <u>Lanham Act 15 U.S.C. § 1125(a)</u>

163.    Plaintiffs restate and re-allege each and every allegation set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

164.    Each Defendant's unauthorized sale and attempted sales of Gray Market Goods as legitimate Dabur India Mark products to unsuspecting consumers constitutes false advertising, which is a violation of Section 43(a)(B) of the Lanham Act, 15 U.S.C. §1125(a)(1)(B).

41

165.    Each Defendant's sale and continued sale of Gray Market Goods has created a substantial likelihood of confusion and caused mistake and deception in consumers' minds because the unauthorized products, although physically similar to legitimate Dabur India Mark products, are materially different from the legitimate Dabur India Mark products .

166.    Defendants market the Gray Market Goods, which, contrary to the U.S. Goods, do not comply with FDA labeling requirements, may contain non-FDA approved ingredients, do not satisfy quality control export requirements and/or are otherwise different from the Dabur India U.S. Goods.

167.     Moreover, these falsely labeled goods travel in interstate commerce because they are sold across numerous states, including in New Jersey, and are not manufactured within the borders of the states in which they are sold.

168.    Each Defendant's misleading labels are likely to influence consumers' purchase choices because consumers will choose each Defendant's Gray Market Goods believing they are affiliated with the familiar products of Plaintiffs.

169.    Each Defendant's inferior products and false labeling harm the goodwill Plaintiffs have worked hard to generate, and, in turn, impact Plaintiffs' sales and any future sales Plaintiffs may seek to have in this District and in the United States.

170.    Each Defendant's acts greatly and irreparably damage Plaintiffs and will continue to so damage Plaintiffs unless restrained by this Court; wherefore, Plaintiffs are without an adequate remedy at law for the above immediate and continuing harm. Accordingly, Plaintiffs have been, and absent injunctive relief will continue to be irreparably harm by each Defendant's actions.

171.    Therefore, Plaintiffs are entitled to, among other things, an order enjoining and restraining each Defendant from selling any Gray Market Goods, including, but not limited to, products intended for sale in India, as well as to Defendants' profits, Dabur India's  reasonable attorneys' fees and any other remedies provided by 15 U.S.C. § 1116 and 1117.


### THIRD CAUSE OF ACTION
### False Association Pursuant to Section 43(a)
### of the Lanham Act, 15 U.S.C. § 1125(a)

172.    Plaintiffs restate and re-allege each and every allegation set forth in the foregoing paragraphs of this Complaint as if fully set forth herein.

173.    Dabur India has used the name Dabur for more than one hundred and thirty-five years for its products.  DABUR™ is an arbitrary and distinctive mark for Dabur India Mark products and, consequently, is a valid and legally protectable trademark, trade name and house mark.

174.    Dabur India adopted the DABUR™ mark more than one hundred and thirty-five years ago and properly registered it in India and the U.S.[4]

175.    Dabur India's Mark products also have a huge presence in the overseas markets and are today available in over 100 countries across the globe. Its brands are highly popular in the Middle East, SAARC countries, Africa, US, Europe, and Russia.

---

[4] The Dabur® trademark was first issued in India and later issued on April 18, 1995 in the United States.

176.    Dabur India's DABUR™ mark is well-known amongst Indians, Indian Americans, other South Asian Indians, and others that have travelled to India.

177.    Each Defendant's sale of Dabur India's Gray Market Goods is likely to deceive, confuse, and mislead purchasers and prospective purchasers into believing that these products including Dabur India's Marks are authorized by and backed by Dabur India, when, in fact, they are not. The likelihood of confusion, mistake, and deception caused by Defendant's sale of Gray Market Goods is causing irreparable harm to Plaintiffs.

178.    Each Defendant's sale and continued sale of Gray Market Goods has created a substantial likelihood of confusion and caused mistake and deception in consumers' minds because the unauthorized products, although physically similar to legitimate Dabur India Mark products and are materially different from the legitimate Dabur India Mark products.

179.    It is unlikely that any consumer would engage in a thorough investigation to uncover the true source of Defendants' DABUR® gray market goods.

180.    Each Defendant's deliberate importation, distribution, and sale of Dabur India's gray market goods harm the goodwill Dabur India has worked to generate and, in turn, impact Dabur India's sales in India and its future sales in this District and in the United States.

181.    Each Defendant unauthorized use of Dabur India Mark products constitutes use in commerce, without the consent of Dabur India, of a reproduction, counterfeit, copy, or colorable imitation of the Dabur India Marks in connection with the advertisement, promotion, sale, and distribution of products and/or services.  Such use is likely to cause confusion or mistake, or to deceive customers, and therefore infringes the Dabur India Marks, in violation of 15 U.S.C. § 1114(1).

44

182.     Each Defendant's acts greatly and irreparably damage Plaintiffs and will continue to so damage Plaintiffs unless restrained by this Court; wherefore, Plaintiffs are without an adequate remedy at law for the above immediate and continuing harm. Accordingly, Plaintiffs have been, and absent injunctive relief will continue to be irreparably harm by each Defendant's actions.

183.     The foregoing acts of each defendant constitute a willful violation of Section 43(a) of the Lanham Act.

184.     Therefore, Plaintiffs are entitled to, among other things, an order enjoining and restraining each Defendant from selling any Gray Market Goods, including, but not limited to, products intended for sale in India, as well as to Defendants' profits, Plaintiffs' reasonable attorneys' fees and any other remedies provided by 15 U.S.C. § 1116 and 1117.

## FOURTH CAUSE OF ACTION
### False Designation of Origin Pursuant to Section 43(a)
### of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A)

185.     Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporates them by reference.

186.     Each Defendant's use of Dabur India's Marks in the manner alleged herein constitutes a false designation of origin within the meaning of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), which is likely to cause confusion, mistake, or deception as to the affiliation, connection, source, origin, authorization, sponsorship, and/or approval of each Defendant's commercial activities with respect to the Dabur India Marks.

187.    The purchasing public is likely to attribute to Dabur India, each use by Defendants of the Dabur India Marks as a source of origin, authorization, and/or sponsorship for the products Defendants sell and, further, purchase products from each Defendant in the erroneous belief that each Defendant is authorized by, associated with, sponsored by, or affiliated with Dabur India, when they are not.

188.    Each Defendant's actions have been conducted intentionally and willfully, with the express intent to cause confusion and mistake, to deceive and mislead the purchasing public, to trade upon the high-quality reputation of Dabur India, and to improperly appropriate to itself the valuable trademark rights of Dabur India.

189.    Each Defendant's unlawful conduct has deceived, and is likely to continue to deceive, a material segment of the consumers to whom each Defendant has directed their marketing activities. Defendants' false and/or misleading statements are material in that they are likely to influence consumers to purchase products from Defendants and cause competitive and other commercial injuries to Plaintiffs. Each Defendant has made, and continues to make, false and/or misleading statements with the intent to cause confusion and mistake, and to deceive the public into believing that each Defendant is authorized by, associated with, sponsored by, or affiliated with Dabur India, when they are not. Plaintiffs have been damaged as a result.

190.    As a result of each Defendant's misconduct, Plaintiffs have suffered, and will continue to suffer, irreparable harm to their goodwill and reputation with both their customers and their authorized distributors.

191.    Each Defendant's above-described acts greatly and irreparably damage Plaintiffs and will continue to so damage Plaintiffs unless restrained by this Court; wherefore, Plaintiffs are without an adequate remedy at law for the above immediate and continuing harm. Accordingly,

46

Plaintiffs have been, and absent injunctive relief will continue to be irreparably harm by each Defendant's actions.

192.    Therefore, Plaintiffs are entitled to, among other things, an order enjoining and restraining each Defendant from selling any Gray Market Goods, including, but not limited to, products intended for sale in India, as well as to each Defendant's profits, Plaintiffs' reasonable attorneys' fees and any other remedies provided by 15 U.S.C. § 1116 and 1117.

**FIFTH CAUSE OF ACTION**

**Unfair Competition in Violation of**

**N.J. Stat. Ann. § 56:4-1 *et seq*.**

193.     Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporates them by reference.

194.    Without Dabur India's  consent, each Defendant has appropriated for its own use Dabur India's  Marks.

195.    Each Defendant has used Dabur India's Marks in commerce in connection with the sale, offering for sale, distribution, and/or advertising of Gray Market Goods. These acts have caused or are likely to cause confusion, mistake, or deception as to the source of origin, sponsorship or approval of the Gray Market Goods each Defendant sells in that purchasers and other are likely to believe Dabur India authorizes and controls Defendants' sale of Gray Market Goods in the United States or that Defendants are associated with or related to Dabur India.

196.    Each Defendant's acts are likely to injure and, on information and belief, have injured  Plaintiffs'  business reputation and relations with retail accounts in the United States by

causing customer dissatisfaction, a diminution in value of the goodwill associated with the Dabur India Marks, and a loss of Plaintiffs' sales and market share to their competition.

197.    Each Defendant's sale, offering for sale, distribution, and/or advertising Gray Market Goods in the United States has been committed deliberately and willfully, with knowledge of Dabur India's exclusive rights and goodwill in the Dabur India Marks and with a bad faith intent to cause confusion and trade on Dabur India's goodwill.

198.    Each Defendant's acts set forth above constitute unlawful, unfair, or fraudulent business practices in violation of N.J. Stat. Ann. § 56:4-1 *et seq.*

199.    By reason of each Defendant's infringing activities, each Defendant has damaged and caused irreparable harm to Plaintiffs and, unless restrained, will continue to damage, and cause irreparable injury to Plaintiffs' goodwill and reputation.

200.    Each Defendant's acts have and will continue to injure Plaintiffs by, among other things, siphoning customers, diluting Dabur India's Marks, confusing customers, and injuring Plaintiffs' reputation.

201.    Each Defendant's use of the Dabur India Marks deceives customers and potential customers regarding the origin of goods and services offered by each Defendant.

202.    Plaintiffs have no adequate remedy at law for the above immediate and continuing harm. Plaintiffs have been, and absent injunctive relief will continue to be, irreparably harmed by each Defendant's actions.

203.    Pursuant to N.J. Stat. Ann. § 56:4-2, Plaintiffs are entitled to injunctive relief and recovery of all direct and indirect damages, trebled within the discretion of the court and other remedies provided by N.J.S.A. §§ 56:3-13.16 to 56:3-13.18.

## SIXTH CAUSE OF ACTION
### (Unfair Competition in Violation of
### New Jersey Common Law)

204.    Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporates them by reference.

205.    In connection with the promotion, marketing, and distribution of the Gray Market Goods, upon information and belief, each Defendant have made certain factual misrepresentations, including, but not limited to, those statements contained herein and incorporated herein by reference.

206.    Such representations are material, as they are likely to deceive or mislead prospective customers and to encourage prospective purchasers to purchase the Defendants' Gray Market Goods instead of genuine Dabur India Mark products .

207.    Each Defendant's conduct is likely to confuse a prospective buyer or customer as to the origin, source, or sponsorship of their products, or to cause mistake or to deceive the public into believing that their sale of the Gray Market Goods is authorized by Dabur India.

208.    Each Defendant has promoted and deceptively marketed the Gray Market Goods to the detriment of Plaintiffs, as many of Plaintiffs' customers and prospective customers have been and will be induced to purchase the Gray Market Goods instead of Dabur India Mark products, based on each Defendant statements and conduct described more fully herein.

209.    Plaintiffs' customers and prospective customers would not otherwise have purchased the Gray Market Goods but for Defendants' conduct and representations described more fully herein.

210.    Plaintiffs have a reasonable basis for believing that each Defendant's misrepresentations and conduct, described more fully herein, have caused or are likely to cause a diversion of its customers to its competitors, to decrease Plaintiffs' profits, and/or to cause harm to Plaintiffs' reputation or goodwill.

211.    Each Defendant's conduct in deceptively marketing and promoting the Gray Market Goods, and its other acts and conduct as described herein, are actionable as an unfair method of competition pursuant to the common law of New Jersey, and Plaintiffs have been damaged as a result of each Defendant's unfair competition.

212.    Because each Defendant's acts were undertaken with the intent to harm Plaintiffs in disregard of their rights, Plaintiffs are further entitled to an award of punitive damages against each Defendant in an amount sufficient to punish it and to deter such conduct in the future.

213.    Each Defendant's acts greatly and irreparably damage Plaintiffs and will continue to so damage Plaintiffs unless restrained by this Court; wherefore, Plaintiffs are without an adequate remedy at law for the above immediate and continuing harm. Accordingly, Plaintiffs have been, and absent injunctive relief will continue to be irreparably harm by each Defendant's actions.

214.    Therefore, Plaintiffs are entitled to, among other things, an order enjoining and restraining each Defendant from selling any Gray Market Goods, including, but not limited to, products intended for sale in India, as well as to each Defendant's profits, and other remedies provided by New Jersey Law.

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment

215.    Plaintiffs hereby restate and re-allege the allegations set forth in the preceding paragraphs and incorporates them by reference.

216.    Each Defendant received an improper benefit in the form of goods wrongfully acquired at an unreasonably low price, and profits from the improper resale of those goods.

217.    It would be inequitable to allow each Defendant to retain these goods and the profits derived from their sale due to their wrongful acquisition and improper marketing.

218.    Defendants have been unjustly enriched at the expense of the Plaintiffs.  As a result, Plaintiffs have been damaged  in an amount to be determined at trial, plus interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A. For judgment that:

1. Each Defendant has violated Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1);

2. Each Defendant has engaged in false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B);

3. Each Defendant has engaged in false designation of origin in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A);

4. Each Defendant has engaged in unfair competition in violation of N.J. Stat. Ann. § 56:4-1 *et seq.*;

5. Each Defendant has engaged in unfair competition in violation of the common law of the State of New Jersey; and

6. Each Defendant has been unjustly enriched thereby.

B.       For a preliminary injunction and, thereafter, a permanent injunction restraining and enjoining each Defendant and all of their agents, servants, employees, successors and assigns, and all persons in active concert or participation with each Defendant (or their agents) from:

a. Selling, marketing, advertising, importing, or purchasing Gray Market Goods  .

b. Using any of the Dabur India Marks and/or any other confusingly similar designation, alone or in combination with other words, phrases, symbols, or designs, as trademarks, trade names, domain name components or otherwise, to market, advertise, or identify Defendant's goods or services.

c. Otherwise infringing the Dabur India Marks;

d. Representing by any means whatsoever, directly, or indirectly, that any products or services offered or provided by Defendants are offered or authorized by Plaintiffs, or from otherwise taking any action likely to cause confusion, mistake, or deception on the part of consumers as to the source or origin of such products or services or as to any authorization, sponsorship, approval, or affiliation relationship between Defendants and Plaintiffs.

e. Affixing, applying, annexing, or using in connection with the manufacture, distribution, marketing, advertising, packaging, sale, and/or offering for sale or other use of any products or services, a false description or representation, including without limitation words, symbols, photographs, or product representations similar to those used by Dabur India, tending to falsely describe or represent such products or services as being those of Dabur India.

f. Unfairly competing with the Plaintiffs in any manner whatsoever or otherwise injuring their business reputation in the manner complained of herein; and

g. Engaging in assignments or transfers, formation of new entities or associations or utilization of any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in sub-paragraphs (a) through (g) above.

C.       An Order, under 15 U.S.C. §§ 1116 and 1118, requiring each Defendant (including their employees and agents) to deliver to Dabur USA (or allow Dabur USA to pick up), or requiring to be destroyed, all Gray Market Goods that are in each Defendant's possession, custody, or control.

D.       An Order, pursuant to 15 U.S.C. § 1116, requiring each Defendant to file with this Court and serve upon Dabur within 30 days after the entry of each of the preliminary and permanent injunctions a report, in writing and under oath, setting forth in detail the manner in which Defendants have complied with the preceding two paragraphs of this Prayer for Relief.

E.       An Order:

1. Awarding Dabur India, under 15 U.S.C. § 1117, all profits received by each Defendant from the sales and revenues of any kind made as a result of each Defendant's sales of Gray Market Goods, and damages, to be determined, that Dabur India has suffered as a result of each Defendant's sales and marketing of Gray Market Goods (including, but not limited to, Dabur India's lost profits, price erosion, and damages awarded pursuant to 15 U.S.C. § 1117 and N.J. Stat. Ann. § 56:4-2, trebled);

2. Awarding Plaintiffs' attorneys' fees and costs;

3. Awarding Plaintiffs damages, attorneys' fees, and costs to the fullest extent provided for by the United States statute and the common law of New Jersey, including punitive damages;

53

4. Awarding Plaintiffs pre-judgment and post-judgment interest; and

5. Awarding Plaintiffs such other and further relief as this Court deems just and equitable.

## DEMAND FOR A JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.

Dated: August 3, 2021

Respectfully submitted,

By: s/ Mark J. Ingber

Mark J. Ingber, Esq.
The Ingber Law Firm
30 West Mt. Pleasant Avenue
Suite 203
Livingston, NJ 07039
(973) 921-0080
email: ingber.lawfirm@gmail.com

Attorneys for Plaintiffs

54